Filed 2/26/13  Adoption of Janelle M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Adoption of JANELLE M., a Minor. | D062595 |
| R.B., | |
| Plaintiff and Respondent, | (Super. Ct. No. A58225) |
| v. | |
| R.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Father R.M. appeals an order granting the petition of stepfather R.B. and allowing R.B. to adopt minor Janelle M. without R.M.'s consent (Fam. Code, § 8604, subd. (b)).[1] R.M. contends R.B.'s adoption request and petition did not allege, and the trial court did not expressly find, that R.M. had willfully failed to support Janelle.  We affirm.

---

1    All further statutory references are to the Family Code unless otherwise specified.

## BACKGROUND

Janelle's mother, B.B., married R.M. in 2002. Janelle was born in January 2005. R.M. was present at the birth and his name is on Janelle's birth certificate. R.M. and B.B. separated in 2008. Janelle has been in B.B.'s sole care since then.

B.B. reported that during their marriage, R.M. abused her physically and emotionally. In October 2008, B.B. filed for divorce. In November, R.M.'s friend told B.B. that R.M. was planning to have B.B. killed. B.B. called the police and terminated R.M.'s visits with Janelle. B.B. kept her location confidential because R.M. had threatened her life. The last contact between R.M. and Janelle took place in November or December 2008, when Janelle was three years old.

In December 2008, R.M. was arrested and jailed. B.B. obtained a restraining order protecting her from R.M.[2] In early 2009, R.M. was convicted of soliciting B.B.'s murder. R.M. was sentenced to three years in prison. During his incarceration, he earned no money with which to pay child support.

In mid-2009, R.M. sent a letter to Janelle at the maternal grandparents' address. The maternal grandmother told B.B. about the letter. B.B. asked her friend Alana to read the letter and determine whether it was appropriate for Janelle. Alana read the letter and

---

[2]     The restraining order did not apply to Janelle.

told B.B. it was a message to B.B.  B.B. did not read the letter.  R.M. sent no more letters to Janelle, and did not send her any cards or gifts.[3]

In July 2009, B.B. and R.M.'s divorce became final.  B.B. was granted sole legal and physical custody of Janelle.  R.M. was denied visitation and was not ordered to pay child support.  In the spring of 2010, R.B. began supporting Janelle financially and emotionally.

R.M. was released from prison in August 2010.  He began working in September, two weeks after his release, and worked consistently after that.  In January 2011, R.M. hired an attorney.  According to R.M., the attorney told him not to contact Janelle and not to send money, and the attorney said he could not file a visitation request until R.M.'s parole terminated.  In September, R.M.'s parole terminated and his attorney filed a motion in family court seeking visitation between R.M. and Janelle.  In November, B.B. and R.B. married.  In December, the court renewed B.B.'s restraining order against R.M.

In January 2012, B.B. and R.M. attended family court mediation.  The mediator recommended that B.B. retain legal custody and that her home be Janelle's primary residence.  The mediator noted that R.M. had not been a part of Janelle's life since 2008, and it was critical to determine whether R.M. posed a risk of harm to Janelle.  The mediator therefore recommended that there be no contact between R.M. and Janelle

---

3    The maternal grandmother's address never changed.  R.M. knew the maternal grandmother's telephone number, which had also not changed, and did not call her.  R.M. testified that the restraining order prohibited him from going to the maternal grandmother's address or telephoning her, but he "felt safe enough to send the letter because I was in custody and I knew there was nothing possible I would do."

pending psychological evaluations and clinical assessments of R.M., B.B., Janelle and any other party deemed appropriate.

In March 2012, R.B. filed a request to adopt seven-year-old Janelle. B.B. joined in the request. A hearing was set for June, but taken off calendar after R.B. and B.B. were told they had not given R.M. sufficient notice.[4] In April, R.M. was ordered to pay child support.

On June 14, 2012, R.B. filed his petition. B.B. filed a declaration consenting to R.B.'s adoption of Janelle. The San Diego County Health and Human Services Agency (Agency) recommended that the petition be granted.

In July 2012, R.M. underwent a psychological evaluation. That month, B.B. received two child support payments as a result of the garnishment of R.M.'s wages. This was the first time she had received financial support from R.M. She received one more support payment before trial.

In August 2012, R.M. told an Agency social worker that his arrest "was all a mistake; [h]e had talked to his 'best friend' and the information was misunderstood." R.M. denied there was any violence during his marriage to B.B. Janelle did not remember R.M. and viewed R.B. as her "daddy." On August 20, the court found the allegations in the petition true and granted the petition.

---

4       R.M. received the notice and appeared at the hearing.

DISCUSSION

Section 8604 sets forth circumstances under which the consent of a presumed father is not required for the child's adoption.[5] (§ 8604, subd. (a).) "If one birth parent has been awarded custody by judicial order, or has custody by agreement of both parents, and the other birth parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so, then the birth parent having sole custody may consent to the adoption . . . ." (*Id.*, subd. (b).) "Failure of a birth parent to pay for the care, support, and education of the child for the period of one year or failure of a birth parent to communicate with the child for the period of one year is prima facie evidence that the failure was willful and without lawful excuse. If the birth parent . . . ha[s] made only token efforts to support or communicate with the child, the court may disregard those token efforts." (*Id.*, subd. (c).) The petitioner has the burden of proof by clear and convincing evidence. (*In re Jay R.* (1983) 150 Cal.App.3d 251, 265 [construing § 8604's predecessor, Civil Code former § 224].) On appeal, we apply the abuse of discretion standard. (*Adoption of Thevenin* (1961) 189 Cal.App.2d 245, 251 [construing Civil Code former § 224].)

R.M. is incorrect in his contention that R.B.'s petition and adoption request did not allege that R.M. had willfully failed to support Janelle. In his verified petition, R.B. alleged Janelle "has not communicated with and seen [R.M.] since November 2008 to the present . . . ." An attachment to the petition stated, "Please note that child, Janelle M[.],

---

[5] No one disputes R.M.'s status as a presumed father. (§ 7611, subd. (a).)

5

has never received any child support payment and has never received any payment for child care or medical expenses[.]" In his adoption request, R.B. cited section 8604, subdivision (b), and declared, under penalty of perjury, R.M. "has not contacted [Janelle] in one year or more." Furthermore, R.M. received the citation for adoption, which states: "It is alleged that the other birth parent has been awarded custody of the child by judicial order or has custody by agreement of both parents. It is further alleged that you have, for a period of one year, willfully failed to communicate with and to pay for the care, support, and education of the child when able to do so."

The court found there had been no contact between R.M. and Janelle for at least one year and concluded "the allegations in the petition are sustainable." In the minute order, boxes are checked corresponding to statements including "The Petition is true"; "The Court grants the petition by clear and convincing evidence"; "Mother alone may consent to adoption"; and "The adoption may proceed pursuant to . . . Section 8604." The box next to one more statement is also checked: "Father has willfully failed to communicate with the minor and support the minor for one year or more." In that statement, the words "and support the minor" are crossed out. R.M. argues that, in light of the language that is crossed out, the court did not expressly find that R.M. had willfully failed to support Janelle, and the record does not support a finding by clear and convincing evidence that he failed to support her. This argument is contradicted by the court's statement on the record that "the allegations in the petition are sustainable" and the minute order's remaining statements quoted above. These statements, taken together, encompass the statutory requirements of a failure to support as well as a failure to

6

communicate.  Thus, the presumption remains that the court acted properly in reaching its decision.  (*In re Elizabeth M.* (2008) 158 Cal.App.4th 1551, 1556, citing Evid. Code, § 664.)

R.M. testified he had worked since September 2010 but did not pay support for Janelle until ordered to do so in April 2012, more than one and one-half years later.  The evidence is equally clear that he made no attempt to communicate with her from mid-2009, when he sent the letter to the maternal grandmother's address, through the date of the hearing, a period of approximately three years.  R.M. does not contend, and the record does not show, that the restraining order prevented him from attempting contact with Janelle.  The court did not abuse its discretion in granting the petition.

## DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.


7